UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFF S. JUBAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 04 C 6518 |
| v. | ) |
| | ) Honorable John W. Darrah |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff sought disability benefits from Defendant, Jo Anne B. Barnhart, the Commissioner of Social Security, for a kidney ailment. After a hearing, the administrative law judge ("the ALJ") concluded that Plaintiff could either return to his past work or find other employment. Plaintiff moves for summary judgment and seeks a reversal or remand of the ALJ's decision; Defendant moves for summary judgment and asks that the ALJ's decision be affirmed.

## PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits on May 15, 2001, on the grounds that he suffers from various kidney ailments: distal renal tubular acidosis ("RTA"), hypokalemia, and chronic renal insufficiency. At the time, Plaintiff was forty-one years old. The Social Security Administration denied his application and his request for reconsideration.

Plaintiff filed a request for a hearing, which was granted. The hearing was held before an ALJ on December 5, 2002. In a written opinion dated May 22, 2003, the ALJ determined that Plaintiff was not disabled. The ALJ's decision was affirmed by the Appeals Council on August 13, 2004, making the ALJ's decision the final decision of Defendant.

# THE ADMINISTRATIVE PROCEEDING

*Plaintiff's Testimony*

Plaintiff testified that he was born on May 9, 1960, and was forty-two years old at the time of the hearing. Plaintiff attended high school through twelfth grade but did not complete the graduation requirements. After high school, Plaintiff completed a truck-driver training program and worked as a truck driver for approximately fifteen years, until 1999. Since Plaintiff's alleged onset of disability, he has performed in three jobs, none of which required any lifting. From January to March 2000, Plaintiff worked as a truck driver. During August 2000, Plaintiff once again worked as a truck driver for twenty-eight days. In October 2000, Plaintiff also worked as a truck driver for a construction company for two-and-a-half weeks. These jobs ended because of Plaintiff's health problems. Plaintiff made approximately $11,454.00 after his illness began.

At the hearing before the ALJ, Plaintiff testified that he suffered from muscle cramps as a result of his kidney conditions. Plaintiff's feet hurt if he stood for longer than half-an-hour. If Plaintiff sat, his legs got numb, he experienced severe cramps in both calves, toes, feet, and legs, and his back hurt; Plaintiff would have to stand for about half-an-hour until the pain would go away. His hands and right bicep cramp if exerted. Plaintiff could walk for about twenty minutes but only for half a mile; Plaintiff could not climb stairs because his ankles would start hurting. Plaintiff could probably lift twenty pounds and possibly fifty pounds, and he could bend and stoop "okay." Plaintiff also testified that he suffers from memory loss and confusion and that his medication, sodium bicarbonate and potassium, made him dizzy. Plaintiff testified that he was depressed and nervous, although he had never previously raised these complaints to a physician.

Plaintiff consumed alcohol subject to his physician's limitations but did not drink to excess. Plaintiff stopped drinking alcohol in October 2002. Previously, in 1993, Plaintiff's driver's license was suspended for approximately two years when Plaintiff refused to take a Breathalyzer test following an arrest for driving under the influence.

Plaintiff lives with his parents and is able to cook, wash his clothes, drive a car, go to the store, and pick up groceries if they are not heavy. Plaintiff, though, cannot cut the grass. On a typical day, Plaintiff usually lies down eight or nine times for a total of four to five hours and sits for other parts of the day.

Plaintiff has been seeing a physician for his kidney ailments but has not seen a nephrologist, a kidney specialist, because he has no insurance and cannot afford to see a specialist. According to Plaintiff, he needs kidney surgery to alleviate his symptoms; he cannot afford this. Plaintiff testified that his condition is stable, in that it is not getting any better and is not getting any worse.

*Vocational Expert's Testimony*

A vocational expert called by Plaintiff also testified at Plaintiff's hearing. The expert stated that Plaintiff's work as a driver prior to the onset of his illness was medium to heavy, semi-skilled work. Thereafter, Plaintiff's work in 2000 was light and either skilled or semi-skilled work.

The vocational expert testified concerning a number of jobs a person of Plaintiff's age and education could perform. No jobs would be available to such a person if: (1) the job

3

involved "medium work[1]," (2) a person experienced cramping after repetitive use of his arms and legs, and (3) continual arm and leg use was required. Jobs such as a security monitor, information clerk, and sorter would be available if: (1) the job involved medium work, (2) a person experienced cramping after repetitive use of his arms and legs, and (3) occasional arm and leg use was required. If the person also suffered from memory problems and confusion, no jobs would be available.

The expert testified that jobs involving hand packaging, simple assembly, and checking and examining would be available if the person could do unskilled work[2] but could not: (1) stand longer than thirty minutes, (2) walk more than twenty minutes or more than one-half mile, (3) sit longer than thirty minutes without standing on his feet for half-an-hour, and (4) lift more than twenty pounds or possibly more than fifty pounds.

The ALJ asked the vocational expert, "if I were to fully credit all of the [Plaintiff's] testimony, including that of a need to lay down eight or nine times during the day for a total of four to five hours, as well as problems getting along with anyone and limited activities, would

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567.

[2] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding, and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. § 404.1568.

that give you sufficient information to reach an opinion as to the vocational outlook?" In response to this question, the vocational expert testified that "there wouldn't be any employment available." (R. at 248).

*Medical Evidence*

From 1997 until September 2001, Plaintiff was treated by Dr. Vlad Badescu, a primary care physician. Dr. Badescu indicated that Plaintiff felt well in January and February of 2001 but that Plaintiff complained of pain and swelling in his feet when he was on his feet all day. Later records from Dr. Badescu reflect that Plaintiff had pain in both feet and ankles, although Dr. Badescu felt this pain was localized; and he administered shots for heel spurs.

In June and July of 1998, Plaintiff was treated for kidney ailments at the hospital. Both times, Plaintiff was drinking tequila, and he experienced severe episodes of RTA and hypokalemia. Potassium and sodium bicarbonate supplements were prescribed, and his condition returned to normal. In September 2000, Plaintiff went to the emergency room with complaints of generalized weakness, an inability to raise his arms, and an inability to walk. Plaintiff stated that he had not taken the potassium medication for five days.

In September 2001, Plaintiff was given a consultive exam[3] by a physician, Dr. Yatin Shah. Plaintiff stated that he experienced generalized weakness with muscle cramps and that he had difficulty with daily activities but could drive and ambulate without any assistance. Plaintiff also stated that he used alcohol socially. The physician noted that Plaintiff was well nourished, well hydrated, and was not in acute distress. The summary of the report

---

[3] "A consultive examination is a physical or mental examination or test performed at [the Agency's] request and expense from a treating source or another medical source, including a pediatrician when appropriate." 20 C.F.R. § 404.1519.

stated that "[t]he above claimant is a 41 yr. old male with h/o Ch. Hypokalemia due to Renal tubular acidosis. Clinically, physical examination is normal. The claimant has difficulty with his daily activities due to muscle weakness & cramps, but he is able to ambulate without any assisting devices."

In December 2001, Plaintiff began receiving treatment for the kidney ailments from Dr. Joan Allen. From December 2001 until December 2002, Dr. Allen saw Plaintiff approximately fourteen to fifteen times. She took a blood test every month, and her reports include clinical progress notes and results from laboratory testing. On December 13, 2001, the initial report taken by Dr. Allen stated that Plaintiff "drinks every three months." In February 2002, Dr. Allen indicated that Plaintiff's kidney ailments were controlled. On March 25, 2002, Plaintiff told Dr. Allen that he felt "great." In June, August, September, and October of 2002, Dr. Allen and the other physician who examined Plaintiff noted that Plaintiff's laboratory results were stable and had not changed and that Plaintiff could continue using the same medications. On November 25, 2002, when Plaintiff was suffering from a backache, another physician saw Plaintiff and noted that "[p]t states unable to f/u nephrology + hasn't done so in a while" (patient states unable to follow up with nephrology and has not done so in a while).

On December 16, 2002, Dr. Allen completed a physical residual functional capacity questionnaire and stated that she had not completed a functional physical assessment of Plaintiff. However, she noted that Plaintiff suffered from anxiety; could never crouch, squat, or climb ladders; could rarely climb stairs; would suffer from good days and bad days; and could be absent from work more than four days per month.

On January 22, 2003, Dr. William Hilger, Ph.D performed a consultive psychological exam on Plaintiff. Dr. Hilger opined that Plaintiff gave up quickly on questions that were difficult for Plaintiff. Dr. Hilger further opined that Plaintiff has a fair mental potential to perform work-related activities involving memory, understanding, sustained concentration, persistence, social interaction, and adaptation. However, certain jobs that involve calculational abilities, such as cashier, would be difficult for Plaintiff to perform. Dr. Hilger concluded that Plaintiff had an adjustment disorder with adulthood and was mildly depressed as a result of his health problems and lack of employment.

## *The ALJ's Decision*

The ALJ considered the testimony of the vocational expert regarding the work available to Plaintiff if it involved occasional use of his arms and legs, even if Plaintiff was confused and had memory problems. The ALJ further noted that "if the testimony of the claimant were accepted as an accurate description of the hypothetical person's capabilities and limitations," work would be available. (R. at 14). In his evaluation of the evidence, the ALJ "noted that the vocational expert testified that even a crediting of claimant's testimony would not indicate limitations that would preclude all work." (R. at 16).

The ALJ explained that "while the medical records show a kidney disorder, they also indicate alcohol abuse when claimant has been seen for flare-ups of his kidney disorder and, further, that with abstinence and treatment, his kidney disorder is controlled." (R. at 15). The ALJ noted that Plaintiff required emergency room treatment in 1998 when he drank tequila and again required emergency room treatment in 2000 when Plaintiff failed to take his medication. The ALJ noted that Plaintiff said "I feel great" on March 25, 2002, and that a physician indicated

7

that Plaintiff had not followed up for his RTA "for a while" on November 25, 2002, and concluded "[t]hese records indicate suggest [sic] that his symptoms are aggravated by alcohol and controlled with medication." The ALJ also noted that some of the medical records "show a creatinine clearance indicative of kidney damage but a currently stable kidney." (R. at 14).

In discussing Dr. Shah's consultive examination opinion, the ALJ stated that "claimant reported generalized weakness with muscle cramps from hypokalemia and renal tubular acidosis. However, physical examination was clinically unremarkable and he was described as looking well-nourished, well-hydrated, and in no acute distress." (R. at 15).

In his evaluation of the evidence, the ALJ stated that Dr. Allen's "opinion is not entitled to controlling weight under Social Security Ruling 92-2p since [it was] not supported by treatment records and inconsistent with claimant's activities, including working for a two-month period as an over-the-road driver in 2000." (R. at 16).

The ALJ then made the following findings:

1. The [Plaintiff] met the insured status requirement under Title II of the Act on June 14, 1999, the alleged onset of disability, and continues to be so insured at all times relevant to this decision.

2. The [Plaintiff] has not engaged in substantial gainful activity since the alleged onset of disability.

3. The [Plaintiff] has a kidney disorder, a dysthymic disorder, and a history of alcohol abuse-impairments which, at least in combination, significantly limit his ability to perform basic work activities and constitute, therefore, a "severe" impairment under the Act.

4. The [Plaintiff's] impairments, even in combination, do not meet the requirements nor equal the level of severity contemplated for any impairment listed in Appendix 1 to Subpart P, Regulations No. 4.

8

5. The [Plaintiff's] allegations of disabling symptoms and limitations are not credible for reasons set forth in the body of this decision.

6. The [Plaintiff] has the residual functional capacity to perform at least medium work.

7. The [Plaintiff] can perform past relevant work as a driver.

8. Further, the [Plaintiff] can adjust to other work existing in significant numbers in the economy and, accordingly, is not disabled using the framework of Rule 203.23 in Appendix 2 of Subpart P at 20 CFR 404, consistent with probative testimony from a vocational expert.

9. The [Plaintiff] is not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

The ALJ concluded, "It is my decision that, based on the application filed on May 21, 2001, the [Plaintiff] is not entitled to a period of disability or disability insurance benefits under sections 216(i) and 223, respectively, of the Social Security Act.

## LEGAL STANDARD

Under the Social Security Act, Defendant's findings are conclusive if they are supported by substantial evidence and no error of law occurred. 42 U.S.C. § 405(g). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citation omitted). "When reviewing the record, [the] court may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (*Skarbek*). The ALJ is not to "substitute his or her own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (*Clifford*). "While the ALJ is not required to address every piece of evidence, he must articulate some legitimate reason for his decision. . . . Most importantly, he

9

must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872 (citations omitted). Review of the ALJ's decision is confined to the reasons supplied by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

Under the Social Security Act, individuals are disabled if they cannot engage in any substantial gainful activity due to any medically determinable physical or mental impairment. 42 U.S.C. § 416(i). The ALJ uses the following inquiry to determine whether the claimant has established disability: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed in Appendix 1, subpart 4 of the Social Security regulations; (4) whether the claimant can perform his past relevant work; and (5) whether the claimant is capable of performing work in the national economy. 20 C.F.R. § 404.1520; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001) (*Zurawski*) (citing *Clifford*, 227 F.3d at 868).

The ALJ considers the five factors sequentially, i.e., "[a]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. . . . A negative at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zurawski*, 245 F.3d at 886 (citing *Zalewski v. Heck*, 760 F.3d 160, 162 n.2 (7th Cir. 1985)).

## ANALYSIS

Plaintiff argues, *inter alia*, that the ALJ erred by: (1) misstating portions of the evidence; (2) looking at only certain portions of the evidence to support the ruling and failing to consider the evidence as a whole; (3) rejecting the conclusions of Plaintiff's treating physician, Dr. Allen; and (4) concluding that Plaintiff can return to his past work as a truck driver or perform in other "medium work" jobs.

Plaintiff contends that the ALJ misstated the evidence by ruling that: (1) Plaintiff failed to "follow[] up for his RTA 'for a while,'" (R. at 15, 16); and (2) even if Plaintiff's testimony was fully credited, the vocational expert opined that Plaintiff would still be able to work in some capacity.

The ALJ's statement that Plaintiff had not "followed up for his RTA 'for a while'" is not supported by substantial evidence. (R. at 15, 16). The November 25, 2002, treatment note upon which the ALJ relies states that "[p]t states unable to f/u nephrology + hasn't done so in a while." However, Plaintiff had pursued RTA treatment by seeing physicians at least fourteen times over a one-year period.

The ALJ's conclusion that "the vocational expert testified that even a crediting of claimant's testimony would not indicate limitations that would preclude all work," (R. at 16), is, likewise, not supported by substantial evidence. However, in contrast to the conclusion by the ALJ, the vocational expert specifically stated that if all of Plaintiff's symptoms were fully credited, no employment would be available.

11

Plaintiff next argues that the ALJ only considered the evidence that favored the ALJ's ultimate conclusion, rather than examining the whole record. In particular, Plaintiff argues the ALJ looked to isolated portions of the record concerning: (1) Plaintiff's use of alcohol and failure to take medication, (2) Plaintiff's treatment records, and (3) the consultive exam of Dr. Shah.

The ALJ concluded that Plaintiff's kidney disorder can be controlled with medication and abstinence from alcohol. It may be true that the symptoms of Plaintiff's kidney ailments are aggravated by alcohol and can be controlled with abstinence and medication. However, Plaintiff is seeking relief for an impairment which exists even when Plaintiff moderates his alcohol consumption and uses prescribed medication. After 1998, Plaintiff followed his physician's advice concerning alcohol, only drank socially, and then ceased drinking alcohol completely. Further, the alcohol incidents upon which the ALJ relies occurred in 1998, before the alleged onset of Plaintiff's disability. *See Henderson v. Apfel*, 179 F.3d 507, 513 (7th Cir. 1999).

The ALJ also failed to consider all the medical treatment records in regards to Plaintiff's disability claim and improperly focused on isolated statements of the Plaintiff, such as "I feel great." However, "[a]n ALJ must consider all relevant evidence and may not select or discuss only that evidence that favors his ultimate conclusion." *Binion* ex rel. *Binion v. Chater*, 108 F.3d 780, 788 (7th Cir. 1997). The ALJ improperly focused on these isolated comments and failed to fully consider the more-than-two-year period of treatment Plaintiff had received for his condition, including monthly visits and laboratory tests with Dr. Allen.

Defendant argues that the ALJ considered Dr. Allen's opinion that Plaintiff's kidneys were stable in concluding that Plaintiff was not disabled. Defendant equates this finding of kidney function stability with minimal impairment and cites *Powers v. Apfel*, 207 F.3d 431, 435

(7th Cir. 2000) (*Powers*). In *Powers*, however, the evidence not only indicated that the claimant's condition was stable but that physicians did not place any restrictions on the claimant's ability to work. *Powers*, 207 F.3d at 435. In contrast, while Plaintiff's condition has been described as stable, Dr. Allen found Plaintiff was subject to a number of work restrictions: he could not crouch, squat, or climb ladders; could rarely climb stairs; would have "good days and bad days"; and could be absent from work more than four days per month. Furthermore, a physician's decision that a particular medical condition is stable does not necessarily equate to minimal impairment but, rather, that the condition is not deteriorating. The ALJ failed to articulate his findings in this regard.

The ALJ improperly examined the consultive exam opinion of Dr. Shah. The summary of the opinion explained that while Plaintiff appeared normal, he would have difficulty with daily activities because of muscle weakness and cramps. The ALJ disregarded this evidence and instead focused upon Dr. Shah's statements that would support the ALJ's ultimate conclusion: that the physical examination was clinically unremarkable and that Plaintiff was well nourished, well-hydrated, and in no acute distress. Defendant argues that Dr. Shah's report was appropriately disregarded because he had no direct knowledge of how Plaintiff performed his daily activities. This basis is not found in the ALJ's decision and cannot now be considered.

Plaintiff also contends that the ALJ erred by rejecting the conclusions of Plaintiff's treating physician, Dr. Allen. The ALJ did not consider Dr. Allen's opinion controlling because he determined it was inconsistent with the treatment records and with Plaintiff's activities as a truck driver for two months in 2000.

> A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record. An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability.

*Skarbek*, 390 F.3d at 503 (internal citations and quotations omitted). Based on the ALJ's treatment of the record as a whole, as discussed above, it cannot be said that the ALJ properly discounted Dr. Allen's medical opinion.

Finally, Plaintiff argues the ALJ erred in determining that Plaintiff could return to his previous work as a truck driver or perform in other "medium work" jobs. In reaching this conclusion, and as discussed above, the ALJ necessarily disregarded the testimony of the vocational expert, discounted the opinion of Dr. Allen, and improperly or incompletely considered other evidence. The ALJ was also required to find that Plaintiff's testimony, which was consistent with Dr. Allen's opinion and the remainder of the medical evidence, was not credible. It cannot be said that the ALJ's conclusion that Plaintiff could return to his previous work as a truck driver or perform in other "medium work" jobs is supported by substantial evidence.

Defendant contends that the ALJ's errors were harmless, in that "there is no reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). However, a different result could have been reached by the ALJ based on the foregoing analysis; and a remand is warranted. *Sarchet v. Chater*, 78 F.3d 305, 308-09 (7th Cir. 1996) (citations omitted).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted and Defendant's Motion for Summary Judgment is denied. The decision of the Administrative Law Judge is vacated, and this proceeding is remanded for further proceedings consistent with this opinion.

Dated: August 31, 2005

JOHN W. DARRAH
United States District Judge